Next case is Drager v. PLIVA, Mr. Bogrand. Pleased to hear from you. Thank you, Your Honor, and may it please the Court. In PLIVA, Inc. v. Mensing, the Supreme Court held that federal law preempted state failure-to-warn claims against generic drug companies where federal law prohibited the defendant from providing the warning sought by plaintiff without intervening action by the FDA. The issue in this appeal, by contrast, or the central issue, is whether federal law preempts a state from imposing tort liability for a generic drug company's failure to provide a warning that federal law not only permitted but required it to provide without any agency action. The district court erred in dismissing this suit and preventing Ms. Shirley Gross from amending her complaint to raise precisely that claim. Ms. Gross developed tardive dyskinesia, a serious and incurable neurological disorder, as a result of her long-term use of metoclopramide, as prescribed by her physician between March 2006 and early 2007. In July 2004, that is, almost two years before Ms. Gross first had metoclopramide prescribed to her, the FDA approved a new warning against long-term use for the label of Reglan, the brand name equivalent of the brand name version of metoclopramide. That warning explicitly stated in boldface type, therapy should not exceed 12 weeks in duration. But no drug company, neither Apellipleva, which manufactured all of the generic metoclopramide taken by Ms. Gross, nor the manufacturer of Reglan ever communicated this new warning to Ms. Gross or her physician. Indeed, Apellipleva never added this warning to its labeling from July 2004 until it sold its abbreviated new drug application for metoclopramide in late 2008, even though federal law permitted it to add that warning without prior action by the FDA through the changes-being-affected process. As a result of Pleva's failure to communicate this new warning, Ms. Gross's physician prescribed metoclopramide for far longer than 12 weeks, resulting in her injuries. So the central issue, Your Honors, that I want to address this morning is the issue of the viability of a claim for failure to provide the warning that had already been previously approved by the FDA. And in Mensing, the Supreme Court said that Mensing distinguishes the prior Supreme Court case in Wyeth v. Levine based upon a procedure called the changes-being-affected procedure, or the CBE procedure, which allows a generic – the CBE procedure allows a brand-name drug company to add a new warning to its label at the same time it asks the FDA for approval. It doesn't need to wait for that approval. The issue in Mensing was that generic drug companies were not allowed to use that same process to add a new warning before – without prior agency approval. Is this the issue that you were arguing in your amended complaint? This is the issue that the plaintiffs sought – requested leave to amend in order to – Did you ever file a motion to amend? I don't believe that they did, Your Honor, but the district court did not reject amendment on – No, my question was a procedural one. I didn't see any indication in the record that you ever filed a motion to amend. As far as I know, Your Honor, there was no such motion. Obviously, the better course would have been to formally move to amend. The district court, however, did not deny leave because of the absence of a formal motion. Instead, it denied leave essentially on grounds of futility. That ruling, we contend, is erroneous and is therefore subject to reversal by this court. In Mensing, the Supreme Court said that generic drug companies can use the CBE process to make changes to generic drug labels only when a generic drug manufacturer changes its label to match an updated brand name label. You originally cited Bartlett from the First Circuit extensively. Do you think – do you rely on Bartlett now or you do not? Your Honor, when the briefs – this case has had a long procedural history, as you know – I remember a good part of it. We were – yes, we were here a year ago. So the answer is what? We do – in fact – You did rely on it, but you don't now. We don't – Bartlett clearly rejected one argument that plaintiffs raised in their original briefs to this court, which is the argument – the basic stop-selling argument that plaintiffs could always avoid preemption simply by not – could have avoided a conflict with federal law simply by complying with state law by not selling the unreasonably dangerous product. That argument, obviously, was rejected explicitly in Bartlett and we abandon it here. Having said that, there is one aspect of Bartlett that I think is important. In footnote 4 in Bartlett, the court identified a particular potential exception to preemption where the plaintiff's state law claim paralleled the federal misbranding statute. Did you – but you didn't allege that in your complaint, as I recall. Is that correct? Your Honor, I believe there – I don't recall whether the – whether misbranding is alleged in the complaint, and obviously the law in this area has changed repeatedly since – But you never amended your complaint. Your Honor, I recognize that, and plaintiffs did request leave to amend it. But why is it before us, then, is my question. It's before us, Your Honor, only insofar as the issue of the viability of plaintiffs' state law claims is a live appellate issue and the parallel misbranding argument is a response to the district court's ruling that the plaintiff's claims were preempted. The issue of misbranding was raised in our opening brief to this court. I confess I do not recall whether it was cited in the complaint. But just to finish my response to Judge Shedd, plaintiffs have argued that apart from this issue of failure to include the July 2004 warning, which is not preempted regardless of the parallel misbranding issue, that the fact that plaintiffs' claims parallel the requirements of federal misbranding law, which prohibit the sale of a drug that lacks adequate warnings and prohibit the sale of a drug that contains any false or misleading information in its labeling, is sufficient to save those claims. So maybe you can help me out. In as few words as you can muster. It's not a limitation, just an invitation. I can be verbose, Your Honor. I apologize. What is left of your case? The central claim, Your Honor, I have two other things I want to mention. But the central issue that we want to discuss today is the failure to warn claim under Maryland law based upon the defendant's failure to change its label to include the explicit warning therapy should not exceed 12 weeks in duration, a statement that they could have added to their label immediately after July 2004 without prior FDA action, and a statement that speaks directly to the issue that caused Ms. Gross' injuries. And why do you say that's not preempted? Your Honor, I say it's not preempted for several reasons. And the Sixth Circuit in the Fulgenzy case reaches exactly this conclusion and preserves precisely this claim under Ohio law. In Mensing, the court said that the CB process was available to generic drug companies where they were making a labeling change to conform to an approved change to the brand label. So the whole impossibility issue that came up in Mensing is not applicable when we're talking about a warning that it was not impossible for them to put on their label immediately. That was consistent with the position the FDA took. And as you will recall, in Mensing, the court deferred to the FDA's construction of its regulations. The FDA in its brief said a CBE supplement is the appropriate process for an ANDA holder, which is a generic drug company, to conform its approved labeling to updated RLD approved labeling, which is the brand labeling. But doesn't that would mean, then, that in order to comply, FIBA would have to change its labeling? But it can change its labeling without governmental intervention, which is the issue for impossibility in Mensing. What the court said in Mensing is that the test for impossibility is whether the defendant could independently do under federal law what was required by state law. We are contending that the failure to include that July 2004 warning made the warning inadequate under Maryland law and was the cause of plaintiff's injuries. And there is no question, it is undisputed, I think, under federal law, that FIBA could have made that change without prior FDA approval. So the impossibility analysis in Mensing falls away. And, again, this is exactly the analysis the Fulgenzi court adopted. Let me quote that to you. Could I ask, the language in Mensing, if the manufacturers had independently changed their labels, what does independently mean to you there? Well, Your Honor, if you read Mensing in conjunction with Wyeth v. Levine, the distinction the court was drawing was a distinction between two ways of changing your label. Under the CBE process... Oh, I thought it was distinguishing between generics and non-generics. It was because the issue was the ability of a manufacturer to put a new warning that had never been approved on the label. And what the Supreme Court was addressing in that paragraph seemed to me to be that independently refers to independent of the brand name drug label. No, Your Honor, I don't believe so. I believe what they were saying was independently referred to without affirmative action by the agency to authorize the change because the discussion in the case is all about two different forms of label change, the prior approval supplement and the CBE supplement. Go ahead. I'm sorry, Your Honor. That paragraph, you may be right, but that paragraph doesn't suggest that to me. If the manufacturers had independently changed their labels to satisfy their state law duty, they would have violated federal law. Taking Minson-Dimahy's allegations as true, state law imposed on the manufacturers a duty to attach a safer label. Federal law, however, demanded that generic drug labels be the same at all times. It's the corresponding brand name drug. Your Honor, I apologize. We're talking about two different points in Minson where the word independently appears. In that context, I think you're right. They were talking about the situation where... Independently of the branding drug. Exactly. They were talking about the issue in Mensing. Mensing involved use prior to the... Well, it involved use consistent with... where all the generic products were labeled consistently with the brand labeling. So the issue was, could a generic have added a new warning that wasn't yet on the brand? That's not the issue here. Here the issue is the FDA approved a new warning for the brand that speaks directly to the issue that caused Ms. Gross' injuries. Cleva never made the change to its label for four years, leading to Ms. Gross' injuries. And as a result, the impossibility preemption analysis is inapplicable. So now the question becomes, at least, have you adequately preserved or appeal the issue of the district court's ruling on 12B6 grounds under state law? Your Honor, that is an issue. It's an issue that the defense has raised. I think the answer is that we have. Can you point to a page in your brief? Yes, and I apologize. I was not involved in this appeal at the time of briefing, and I would concede that our briefs are inartful. But at pages 25 through 29 of our opening brief, there is an extensive discussion of Maryland failure to warn law that I understand as a response to District Judge Williams' rejection of the claim under Maryland law. You say 28 to 29? 25 to 29, Your Honor. Is it included in your statement of issues? I do not believe it is, Your Honor. I believe the issue was framed as preemption in the statement of issues. That's an entirely separate issue. That is a separate issue, but the defendants have not objected to that issue, Your Honor. Their only objection was to the failure to raise the issue in our opening brief. Wait a minute. Can you label an issue something and then claim that it also covers something else because of the nature of the argument? I'm having difficulty. Your Honor, the motion for judgment on the pleadings in this case was styled as a preemption motion. That was a motion that the district court granted. The court did deny leave to amend on its reading of Maryland laws precluding the claim. Right. I think it is fair to read plaintiffs' notice of appeal and statement of issues as intended to address all those issues. The defendant has fully briefed those issues. The waiver cases they cite from this court emphasize that the reason for the waiver issue is to ensure that the parties, that the appellee has an opportunity to respond and address the issues. They fully addressed the issues in their brief. And you're saying that the issue, I assume you must mean the district court erred in finding all of the plaintiffs' claims subject to impossibility. I'm sorry, Your Honor. Pages 25 through 29, there are several discussions about Maryland failure to warn law, including a discussion of the learned intermediary doctrine, including a discussion of the read and heed presumption. It was my understanding that it had to be included in your statement of issues. Your Honor, I urge the court's indulgence and believe that it can be fairly understood that that was plaintiff's intention. Certainly, appellee understood that to be plaintiff's intention. It is what it is, and I would hope the issue is preserved. We'll continue the discussion. You reserved some time. I did, Your Honor. Thank you very much. Thank you very much, Mr. Shumsky. Good morning, Your Honors. And may it please the court, I'd like to pick up where the court just left off. There are some very interesting issues in this case, but I would respectfully submit that the court doesn't need to reach them. The only issue presented, as you just pointed out in the blue brief, is whether the district court erred in finding that plaintiff's state law claims were impossibly preempted under mensing. The blue brief didn't even acknowledge the district court's state law holdings, much less assert that the district court abused its broad discretion in denying Ms. Gross leave to amend the complaint. I respectfully submit that it's too late in the day for the plaintiff to contest those state law holdings now, and that it would be improper to excuse the waiver of that issue in order to review a discretionary decision that we entrust to the district court judges in this circuit. I also want to emphasize, I think that those principles have particular force here. Preemption, federal preemption, is at bottom a constitutional issue, and courts typically strain to avoid resolving constitutional issues unnecessarily. I think applying plain vanilla waiver rules is a very clean way for this court to fulfill that avoidance candidate, and that before the court wades into the thicket created by the mensing and Bartlett decisions in the plaintiff's new claims, it ensure that there is a properly preserved state law basis for reaching those issues. I'd be happy to address the failure to update claim on its own terms. I think I would find it useful if you spoke briefly to the misbranding. Sure, I would be delighted to do that, Your Honor. Let me begin by making one thing very clear at the outset. Mr. Bograd's central contention on the merits, the preemption merits, leaving the waiver aside, is that this claim for failure to update is not barred by mensing because mensing only addresses a situation in which it would be impossible for a manufacturer defendant to comply simultaneously with its state and federal obligations. The objection that we have raised in response to the failure to update claim turns on two different things. Part of it is a state law basis, which I'd be happy to address, and that's the inconsistency between the allegations that the original complaint made and the new allegations that the plaintiff wants to make today. But the other part of the objection that we're raising when we're talking about preemption is not one that is based on the impossibility preemption doctrine that was addressed in the mensing case. Our argument instead stems from a different Supreme Court decision that addresses federal preemption, that's Buckman v. Plaintiff's Legal Committee, and a particular federal statute that the Buckman Court interpreted and addressed. And that statute is 21 U.S.C. 337A. And the specific language of 21 U.S.C. 337A says, all such proceedings for the enforcement or to restrain violations of this chapter, and now I'm not quoting, I'm just clarifying, this chapter is the Federal Food, Drug, and Cosmetic Act, shall be by and in the name of the United States. And in the Buckman case, the Supreme Court looked at that federal statute and it said, that means that a private party cannot bring a lawsuit that is predicated on allegations that a manufacturer violated the federal statutes in the Food, Drug, and Cosmetic Act. These are the words the court used in Buckman at 531 U.S. 349 footnote 4. The FDCA leaves no doubt that it is the federal government rather than private litigants who are authorized to file suit for noncompliance with the FDCA. You've just heard Mr. Bograd argue that his central contention in this case is that PLEVA violated the FDCA, that its product was misbranded under federal law, because in 2004 it appears that PLEVA did not put on its label the updated warning that the brand manufacturer had put on its label and that the FDA had approved for use. Which it claims Maryland law would have permitted it to do. In fact, it claims Maryland law required it to do. That's what plaintiff now says. Yeah, shifting to the state law basis. But that is not what the plaintiff said earlier in this case. To the contrary. On the inconsistent pleadings, you don't really contend, do you, that a plaintiff can't shift gears between a first amended complaint and a third amended complaint, right? That happens every day. Your Honor, I do take issue with that, and let me try to explain why. It's one thing for a plaintiff to file an amended complaint that fleshes out a theory that's previously raised, or to add, I'll say, correct errors in the original pleading that obviously relate to the underlying facts. It's even fair in an original complaint. Why can't you just dismiss and file again? Well, and I would respond to that question by going back to what Judge Duncan said, which is that's not what happened in this case. Well, in fact, do we have a first amendment when amended complaint? We do not have a first amendment. We don't have any amended complaint. That's correct, Your Honor. I didn't understand that to be the question. The question was, I thought the question was, you could change between complaints, amended complaints. Not that it had been done. Again, there are certainly some things that can change between amended complaints. Why can't everything change? Well, let me tell you what the— Why can't you just say, we hereby dismiss the first complaint, and guess what? Here's a new complaint. It's facing an entirely different cause of action. Why can't you do that? In those circumstances, Your Honor, there may well be a statute of limitations problem. You have a statute of limitations question across, but that doesn't limit a person from doing the substance of that, does it? Your Honor, I think there is something that does, and let me tell you what the Seventh Circuit has said about this. Why does it matter to you? Sorry, can you say that again, Judge Duncan? Why do you have to defend that when that doesn't appear to be what happened? No, I'm only trying to respond to the question that I was asked. The question is, I think, can it ever be done? Your Honor, and perhaps in circumstances where somebody actually dismisses their case and refiles it appropriately. But, again, that's not what's going on here. And what the Seventh Circuit has said about alternative and inconsistent pleadings is, a pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question. That's a case called American International Adjustment Company v. Galvin. What's the date of that? That's a 1996 decision, Your Honor, and it's 86 F. 3rd, 1455 at 1461. And what the district court said in this case is, I've looked at the original complaint. I've looked at all of the pleadings that the plaintiff has filed up until this point in time. And at every turn, the plaintiff has looked at the language of the 2004 label, the one she is now, the estate in her place is now invoking. And they've said it is inaccurate, misleading, materially incomplete, false, and otherwise inadequate. You'll find that at JA 19. What if they wanted to amend the complaint to correct all those problems? Your Honor, it's not correcting. Quite frankly, I don't understand why you want to argue that a party can't file an amended complaint. Does somehow you think conceding that point hurt your argument in this case? No, Your Honor. I'm not suggesting that there is some ironclad legal barrier to amending the complaint. What I'm suggesting is that it's— I thought that's what Judge Davis asked you. No, and so let me be very clear about that, and I apologize for not answering that question more appropriately in the first instance. There is nothing wrong, no ironclad legal barrier to amending a complaint. But to amend a complaint in this way is particularly troubling when a plaintiff has made a conscious strategic decision to challenge as false, misleading, and inaccurate a particular label and then turn around and say, actually, I've changed my mind. That label was peachy keen. And that's what the district court honed in on. It said throughout the history of this case, you have attacked the adequacy and sufficiency of the 2004 label. You now want to turn around and bring a failure-to-warn claim predicated on the defendant manufacturer's failure to put that label on your product. But as a matter of Maryland state law, there's no such thing as a failure-to-inadequately-warn claim. And so the district court rejected this purely on state law grounds. And, again, I don't want to harp on the waiver point, but the question that was presented to this court by the blue brief in this case is, were the claims impossibly preempted under Mensing? And, in fact, what Mr. Bograd said at the very outset of his argument shows what he's challenging here. What he said before is that the district court erred in denying leave-to-amend the failure-to-update claim. He then described the district court's decision as denying leave-to-amend on futility grounds. Which is factually incorrect. Which is, I think, factually incorrect. It was denied on, let me be clear, futility grounds because it was preempted. When, in fact, that's not what the district court did. Instead, the district court said this at JA 705 to 706. The court did not dismiss plaintiff's claim relating to the 2004 label challenge on grounds of preemption. Rather, the court dismissed this claim in its November 22, 2011 opinion because plaintiff's allegations relating to the 2004 label change failed to state a claim upon which relief can be granted. And then it cross-referenced back to the original opinion, which is JA 467, where the district court previously had said, this is the original opinion, plaintiff does not claim that the alleged failure of PLEVA to update its label gives rise to any cause of action under Maryland law. And the district court at that point in its opinion explained precisely why. Because throughout the history of the case, the plaintiff had been saying that label was false, misleading, inaccurate, insufficient, and inadequate. And having pleaded and consistently maintained throughout the course of this case that that labeling was fraudulent and inadequate, there's no such thing as a failure  Your real point on this right to amend point is that after a court has adjudicated a claim based on an amended complaint or a third amended complaint, it's at that point that it becomes and you fall under sort of the Seventh Circuit conception as you've read it to us. You can't come back after you've lost on the merits and have a do-over in a form of a fifth amended complaint. That's really what you're getting at. Well, that's certainly part of it. But with one twist, which I don't want to lose sight of, which is the question when you're considering the denial of a motion for leave to amend, leaping past the fact that no motion to amend was actually filed, that's not a big part of our argument. I don't want to dilly-dally with that. They're treating their motion to alter and amend the judgment as a motion to amend. And, Your Honor, I'm not going to take issue with that today or force you guys to wade into the mechanics of that. We've got bigger issues to talk about. But the point is that the district court's decision is a discretionary one. It's not a matter of law that's reviewed de novo. It's crystal clear that motions for leave to amend, whether granted or denied, are reviewed for abuse of discretion. We have the standards by which we review them, though, correct? There's standards by which we review them. Oh, that is certainly true, Your Honor. But my point is that years into this case, the district court can't possibly have abused his discretion in saying, I'm not going to let you turn around and have it both ways. That was an entirely fair and reasonable thing for this district court judge to do. And I want to make one other point. I know I've been talking about waivers, spent time talking about state law, the waiver of a challenge to the state law holdings. But you can look in vain through both the blue brief and the gray brief that the plaintiff filed in this case. You won't find mention of the district court's discretion anywhere. That's not raised as an issue. That's not acknowledged as the standard of review. And that's not challenged. But the district court also didn't discuss Buckman, did it, or did it? No, the district court didn't. You brought Buckman to the court. We did bring Buckman to the district court's attention. And what the district court said, and I left out part of the quotation earlier for the sake of brevity, but again, at JA 705 to 706, after the court said, I didn't resolve this on preemption grounds, there's a comment. He says, although a strong argument could be made that it's preempted. And he pointed out that there are courts that have come out different ways on that issue. And we frankly think that if you're willing to jump over the state law waiver to get into the abuse of discretion and then find that the court abused its discretion, we can talk about the preemption issue. But again, our position with respect to the merits is that the Buckman decision is dispositive here. And again, you had exactly the same thing going on in the Buckman case that you have going on here. In Buckman, the plaintiff that wanted to pursue a claim in that case made allegations that the defendant manufacturer had submitted fraudulent statements to the FDA. That those fraudulent statements ultimately led the FDA to put a product onto the market that allegedly injured the plaintiff in that case. And what the court did was it looked at that claim and said, there's something really problematic about this. Because when you submit these fraudulent statements to the FDA, you are violating the FDCA. But you have this statute that we talked about briefly before, 21 U.S.C. 337A, that bars a private plaintiff from pursuing a cause of action that is predicated on allegations that a manufacturer violated federal law. Thank you very much. You've answered our questions. Unless there's something else you need to add, we'll let you stand. No, Your Honor, I'm happy to take a clue and sit down. Thank you so much. Thank you very much. Thank you very much, Mr. Bograd. You have a few minutes. Thank you, Your Honor. I'll try to be brief. First, I think it's important to note the reason for the plaintiff's change in strategy. Mr. Shumsky's client, he didn't mention this, but Mr. Shumsky's client hid the fact that they had not put the new label that made the 2004 change to their label, in fact represented to the Supreme Court in Mensing that they had made the change to the label. Plaintiffs only discovered it in a separate case when the company that bought his company's ANDA Let me say this. Now, you suggested that there's been some improper action. That wasn't raised initially by you, and it wasn't raised in any direct way. I don't want to have to give him time to get back up and deny that. I'm sorry, Your Honor. I'm just saying I want to be careful. You assert that, but let's just move on to the merit. I will, Your Honor. You see what I mean? I wouldn't want somebody to do that to your client. I apologize, Your Honor. My point was that plaintiffs did not know at the time the suit was originally filed that PLVA had not made the 2004 change. It only came out in discovery while Mensing was in the Supreme Court. Indeed, Mr. Shumsky's colleague had to write a letter to the court correcting a statement in their brief about that fact. I want to speak to the substance of the state law issue for a second. I recognize there's a question about whether you think it's properly before you. Leaving aside the question of pleading in the alternative or amending the complaint to make different allegations, Maryland law doesn't, warning law, does not require, quote, unquote, an adequate warning. It requires the manufacturer to exercise reasonable care under the circumstances. That's Moran v. Faberge, and it's the restatement which they regularly rely on. A reasonable manufacturer under these circumstances would have included the warning that federal law required them to include under the 2004 labeling change. In addition, adequacy is a jury question. So the fact that plaintiffs may have contended that even with the 2004 warning this would have been inadequate doesn't matter. It still could have violated Maryland warning law. That leads me to Mr. Shumsky's Buckman point. This claim is not a Buckman claim. We are not contending that CLVA violated Maryland law because it breached its federal obligation to update. We're contending that it violated Maryland law because the warning on its product was not the warning that a reasonable manufacturer would have provided. The argument is, as I understand it, that because it happens to be also a violation of federal law, that extinguishes the state law basis for the claim. Is that your understanding? I think that's his argument, Your Honor. But, in fact, it's exactly the opposite. The fact that it's also a violation of federal law is what allows us to escape the mensing preemption problem. But here's what the Sixth Circuit said in the Fulgenzi case about their Buckman argument. If, nevertheless, there are independent preexisting state law causes of action that parallel federal safety requirements, the suit is not preempted. Here, Fulgenzi's suit is not even premised on violation of federal law, but rather on an independent state duty. But that's the problem, isn't it? There is no preexisting state duty.  There's a duty to warn, but there's no duty to update. But there's a duty to warn, Your Honor, and they didn't provide a warning that federal law allowed them to provide, which was the 2004 warning that therapy should not exceed 12 weeks in duration. Thank you. Again, I'll close by just quoting the Sixth Circuit in Fulgenzi about the basics, a non-preemption of the failure to update claim. Mensing explains that the key question is whether the private party could independently comply with its state duty, and that's where I was referring to independent used in the way I had described it, without relying on the prior exercise of federal agency discretion. In our case, not only could PLEVA have independently updated its labeling to match that of the branded manufacturer through the CBE process, but it had a federal duty to do so. As a result, compliance with federal and state duties was not just possible, it was required. Impossibility preemption is inappropriate in such a case. Thank you, Your Honors. All right, thank you very much. We are going to step down, greet counsel, take a very quick break. Lawyers, in the next case, it won't be a very long break at all. Just a matter of minutes. We'll come back in. The Honorable Court will take a brief recess.
judges: Dennis W. Shedd, Allyson K. Duncan, Andre M. Davis